IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAMONA SMITH                    :
                                :
v.                              :   Civil No. WMN-05-1600
                                :
JOHN VAN BEEK et al.            :
                                :
                                :

**MEMORANDUM**

Before the Court is Plaintiff Romona Smith's motion to remand this case to state court. Paper No. 22. Defendants, John Van Beek ("Van Beek") and Nissan Motor Acceptance Corp. ("Nissan") have opposed the motion, Plaintiff has replied, and Defendants have offered a surreply. Upon a review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Plaintiff's motion will be granted.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

In 1994, Plaintiff purchased a vehicle from Nissan and was unable to make the required car payments. On May 8, 1995, Plaintiff declared bankruptcy under Chapter 7 and on August 23, 1995, the U.S. Bankruptcy Court discharged all of her debts to creditors, including Nissan. In December 1999, Defendant Nissan, by its attorney, Defendant Van Beek filed suit against Plaintiff for the return of the vehicle and damages. The suit was terminated because of Plaintiff's bankruptcy. Defendants then

filed another suit against Plaintiff and obtained a judgment personally against her for $35,877.79, plus post judgment interest. Van Beek employed Karl Salenieks to serve Plaintiff with paperwork relating to that action. Salenieks filed a false Affidavit stating that he served process on her, when in fact he had not.[1] On behalf of Nissan, Van Beek obtained a default judgment against Plaintiff on August 7, 2000. Van Beek again relied on Salenieks to serve Plaintiff with an Order directing her to appear for an examination in aid of enforcement of the judgment and, when she did not appear, Salenieks was employed to deliver a show cause order to Plaintiff. Salenieks filed two more false affidavits, stating that Plaintiff was served when she was not. On July 4, 2001 at the request of Van Beek, a body attachment was served on Plaintiff and she was arrested and incarcerated. Plaintiff subsequently, on December 14, 2001, had Nissan's judgment against her struck.

Plaintiff filed suit for abuse of process, malicious use of process, false arrest, false imprisonment, and negligence against Nissan, Van Beek, and Salenieks in the Circuit Court for Baltimore City on August 2, 2004.[2] Plaintiff obtained a writ of

---

[1] Salenieks actually signed an affidavit admitting that he did not serve Plaintiff. Pl.'s Reply 4. The circuit court dismissed the judgment against Plaintiff after finding, in part, that Salenieks did not serve Plaintiff. Id.

[2] On December 6, 2004 the circuit court dismissed the counts of false arrest and false imprisonment, but denied the motion to dismiss with respect to the remaining three counts.

summons for Salenieks on August 3, 2004.  Plaintiff had difficulty locating Salenieks and on December 8, 2004, the circuit court served a "Notice of Contemplated Dismissal" under Rule 2-507, which states that "an action against any defendant who has not been served . . . is subject to dismissal as to that defendant at the expiration of 120 days from the issuance of original process directed at the defendant."  Plaintiff filed a motion to defer dismissal on December 13, 2004, which the circuit court granted on January 18, 2005.  The circuit court deferred dismissal until May 31, 2005, stating that "[i]f service has not been made on [Salenieks] by the deferral date, the clerk shall enter on the docket 'Dismissed for lack of jurisdiction without prejudice' immediately as to [Salenieks]."  Order Deferring Dismissal.  During this time the Process Server employed to serve Salenieks filed an Affidavit of Due Diligence stating that as of January 27, 2005 he was discontinuing his attempts to serve Salenieks.  Specifically the Process Server noted that:

> I was unable to find [Salenieks], the house at the address is empty and under renovations. There is a realtor's lock on the door and a large trash dumpster is in the yard.  I ran a skip trace but I was unable to find a current address for [Salenieks].

On June 13, 2005, Defendants filed a Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1332.  Removal was based on diversity jurisdiction.  Although the circuit court had not issued an order dismissing Salenieks from the case after the May

3

31 deadline had passed, Defendants allege that, with Salenieks (a Maryland resident) removed from the case, diversity exists as Van Beek is a resident of Fairfax, Virginia and Nissan's corporate address is Dallas, Texas. Plaintiff is a Maryland resident and requests $200,000 in compensatory damages and $500,000 in punitive damages, which exceeds the $75,000 amount in controversy requirement of 28 U.S.C. § 1332(a).

Two days after Defendants filed their Notice of Removal, Plaintiff filed a motion to defer the order of dismissal until August 31, 2005, in the circuit court. On June 24, 2005, Plaintiff filed a motion to remand arguing that Salenieks is still a party to the suit. In the alternative, Plaintiff argues that even if Salenieks has been dismissed, his dismissal was involuntary, and the involuntary dismissal of a non-diverse defendant does not provide grounds for removal.

## II. DISCUSSION

As a general rule, a plaintiff's failure to serve a non-diverse defendant does not permit removal. A party whose presence in the action would destroy diversity must be formally removed from the action as a matter of record. See WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3D § 3723. The circuit court order deferring dismissal stated that, if service was not made by the deadline, dismissal would be immediate. After the deadline had passed, there was not an order entered in

4

the record dismissing Salenieks from the action.  If there was no dismissal, Salenieks is still a party in the action and diversity of citizenship is not present; in that instance, the suit was not properly removed to this Court.  On the other hand, if Salenieks was dismissed from the suit by the passing of the deferral deadline, the dismissal was involuntary and, as discussed below, an involuntary dismissal of a non-diverse party cannot properly be removed to this Court.  Thus, this Court leaves the issue of whether there was a valid dismissal for the circuit court to decide.

A. VOLUNTARY/INVOLUNTARY RULE

Under 28 U.S.C. § 1446(b) diversity of citizenship must be established at the time of removal.  Higgins v. E.I. Du Pont de Nemours & Co., 863 F.2d 1162, 1166 (4th Cir. 1988).  Where dismissal of a party creates complete diversity, the removability of the case depends on whether the dismissal of the non-diverse defendant was voluntary or involuntary.  Id.  If dismissal occurred at the instance of the plaintiff, it is 'voluntary' and the action may be removed.  Id.  If the court ordered the dismissal, it is 'involuntary' and may not be removed.[3]  Id.;

---

[3] The 1949 amendments to the removal statute changed the statutory language of section 1446(b) to the following:  if the case was not initially removable, a notice of removal may be filed upon "receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b).

Cox-Stewart v. Best Buy Stores, L.P., 295 F. Supp. 2d 566, 566 (D. Md. 2003) (determining that the action was nonremovable because the court's dismissal of the non-diverse defendants constituted an involuntary dismissal).  If there was an order dismissing Salenieks, the dismissal would be involuntary, as Plaintiff has consistently opposed the dismissal.  As such, the case was improperly removed to federal court.

Defendants argue that the test for removal is not based on voluntariness as much as it is based on the policy rationale underlying the voluntariness distinction.  Defs.' Opp'n 4-5.  One reason for the voluntary/involuntary distinction is the possibility that a plaintiff may appeal an involuntary dismissal.  Higgins, 863 F.2d at 1166.  In such case, the state appellate court's reversal of the dismissal of the non-diverse party could destroy diversity jurisdiction.  Id.  The voluntariness rule is used as a way to prevent the costly and time wasting loss of jurisdiction of the federal court following a reversal.  Arthur v. E.I. du Pont, 798 F. Supp. 367, 369 n.2 (S.D. W. Va. 1992).

Defendants argue that in evaluating whether removal is proper, the court must consider the likelihood that the dismissal

---

Disagreement exists as to whether the literal reference to 'order' in the statute overrules the pre-1949 cases' voluntariness distinction and permits removal when a non-diverse party is eliminated by a court order.  Higgins, 863 F.2d at 1166.  The trend in the majority of circuits, including the Fourth Circuit, however, retains the distinction.  Id.

of the non-diverse defendant will be reversed on appeal.  Defs.' Opp'n 4-5.  Defendants state, "for the voluntary/involuntary rule to be applicable in this case, there must be a reasonable possibility that the Maryland Court of Special Appeals would reverse the dismissal of the non-diverse party, Salenieks."  Defs.' Opp'n 4-5.  Although, the possibility of reversal is indeed the underlying reasoning for the distinction, the voluntary/involuntary rule is more of a bright line rule than Defendants acknowledge.[4]  See In Re: Manu. Co. of Cedar Rapids, Iowa, 747 F.2d 462 (8th Cir. 1984) (referring to the voluntary/involuntary rule as a bright line test for determining removability, and remanding the case without evaluating the likelihood of the dismissal being reversed).  Courts in the Fourth Circuit have denied removal based on the involuntariness of an appeal without weighing the likelihood that an appeal of the dismissal would be reversed.  See, e.g., Cox-Stewart, 295 F.

---

[4] The split in the circuits over what constitutes "voluntary" has been recognized by various courts.  See Poulos v. Naas Foods, Inc., 959 F.2d 69, 74 (7th Cir. 1992); Lewis v. C.J. Langenfelder & Son, Inc., 2003 U.S. Dist. LEXIS 20164, *8 n.3 (D. Va. 2003).  While the Second Circuit treated a dismissal as voluntary when the plaintiff's failure to appeal was deemed an accession to the dismissal, Quinn v. Aetna Life & Casualty Co., 616 F.2d 38, 40 n.2 (2d Cir. 1980), the majority of courts would not permit the removal of an action where it was triggered by an involuntary act.  Self v. General Motors Corp., 588 F.2d 655, 658-60 (9th Cir. 1978).  The Fourth Circuit has not addressed the issue, Lewis, 2003 U.S. Dist. LEXIS at *8 n.3, and there is not a need to predict which way the Fourth Circuit would decide the issue because it is not clear that Salenieks was dismissed, or that such a dismissal would not be reversed by the state court.

Supp. 2d 566 (D. Md. 2003). Further, in the present case, it would be difficult to evaluate the likelihood that the state court would reverse the dismissal of Salenieks because the question of whether there was a dismissal is still at issue. Thus, even assuming that Salenieks was dismissed by the passing of the May 31 deadline, the dismissal was involuntary and as such, the case was not properly removed to this Court.

   B. Fraudulent Joinder

In the alternative, Defendants argue that Plaintiff fraudulently joined Salenieks in the action for the sole purpose of destroying diversity. Defs.' Opp'n 5. "[F]raudulent joinder is a well-established exception to the voluntary-involuntary rule." Arthur, 798 F. Supp. at 369 (quoting Insinga v. LaBella, 845 F.2d 249, 254 (11th Cir. 1988)). To establish fraudulent joinder, "the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" Hartley v. CSX Transp. Inc., 187 F.3d 422, 424 (4th Cir. 1999) (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)).

Defendants argue that Plaintiff included Salenieks in the action for the sole purpose of destroying diversity and that she "never had any intention of pursuing a cause of action against

Salenieks." Defs.' Opp'n 5.  Where, as here, the defendants do not allege outright fraud in the plaintiff's pleadings, Defendants have the heavy burden of showing "that the plaintiff cannot establish a claim against the non-diverse defendant even after resolving all issues of fact and law in the plaintiff's favor."  Marshall, 6 F.3d at 232-33.

Defendants point to particular discovery responses from Plaintiff which they allege "clearly show that Salenieks was fraudulently joined as a party in an attempt to defeat diversity."[5]  Defs.' Opp'n 5.  Defendants claim that in her interrogatory responses Plaintiff failed to specify any damages caused by Salenieks and failed to identify Salenieks as a person with personal knowledge of any fact or circumstance relating to the allegations in the complaint.  Defs.' Opp'n 6.  Plaintiff responds that she planned to supplement her interrogatory answers by the August 2005 discovery deadline and notes that in responding to an interrogatory request for all relevant documents, several of the documents sent by Plaintiff illustrated Salenieks involvement in the case.  In particular Plaintiff points to the false affidavits of Salenieks, an affidavit where

---

[5] Defendants claim that Plaintiff's improper motives concerning fraudulent joinder only became known to them in the last 30 days (sometime at the end of June 2005).  Def. Opp'n 7.  This is presumably offered as an explanation as to why fraudulent joinder was not mentioned as a basis for removal in the Notice of Removal filed by Defendants.

Salenieks acknowledged that he did not serve Plaintiff, and the transcript of the circuit court's finding that Salenieks did not serve Plaintiff.  Pl.'s Reply 4.

Based on the above facts, this Court finds that there is a possibility that Plaintiff could maintain abuse of process, malicious use of process, or negligence claims against Defendants.  Thus, Defendants fraudulent joinder claim is rejected.  Because the fraudulent joinder exception is inapplicable, there is no bar on imposing the voluntary/involuntary distinction.

### III. CONCLUSION

For the reasons stated above, Plaintiff's motion to remand will be granted.  A separate order consistent with the reasoning of this Memorandum will follow.

                          /s/

                    William M. Nickerson
                    Senior United States District Judge

Dated: September 29, 2005

10